ROBERT CARRIERO *v.* BOROUGH OF
NAUGATUCK ET AL.
(14862)

O'Connell, Foti and Hennessy, Js.

Argued September 16—officially released December 17, 1996

---

*Jayne Elser Welch*, with whom, on the brief, was *Peter E. Mariano*, for the appellant (named defendant).

*David J. Morrissey*, for the appellee (plaintiff).

*Frank A. May* filed a brief for the cities of Hartford and Bridgeport as amici curiae.

O'CONNELL, J. The defendant borough of Naugatuck[1] appeals from the decision by the compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner). Naugatuck claims that the board incorrectly determined that the "cap" established by General Statutes § 7-433b (b),[2] which limits the amount of heart and hypertension benefits a retired municipal police officer may receive under General Statutes § 7-433c,[3] does not apply to pension benefits for years of service as provided in a union contract with the municipality.

The commissioner found the following facts. The plaintiff is a retired Naugatuck police officer. In Janu-

---

[1] The second injury fund was also named as a defendant because the plaintiff went to work for a private employer subsequent to his retirement from the Naugatuck police department. The second injury fund did not participate in the appeal.

[2] General Statutes § 7-433b (b) provides in pertinent part: "*[T]he cumulative payments*, not including payments for medical care, *for compensation and retirement or survivors benefits under section 7-433c* shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors *shall not exceed one hundred per cent of the weekly compensation being paid*, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. . . ." (Emphasis added.)

[3] General Statutes § 7-433c provides in pertinent part: "(a) In recognition of the peculiar problems of . . . regular members of paid police departments, and in recognition of the unusual risks . . . including an unusually high degree of susceptibility to heart disease and hypertension . . . in the event a uniformed member . . . suffers either off duty or on duty any condition or impairment of health . . . or his temporary or permanent, total or partial disability, he . . . shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment . . . ."

ary, 1991, in accordance with its contract with the police union, Naugatuck awarded the plaintiff a pension based solely on his thirty years of service with its police department. This pension was unrelated to his hypertension claim under § 7-433c, and his disability was not an issue or a consideration in Naugatuck's decision to grant the pension.

The commissioner further found that on March 1, 1991, the plaintiff was awarded permanent partial disability benefits because of a 42.5 percent disability of his heart. These disability benefits were awarded pursuant to § 7-433c.

The commissioner held that the statutory cap of § 7-433b (b) did not apply in the present case because the plaintiff's pension was not being paid under § 7-433c but rather was a retirement pension based on years of service. Naugatuck appealed to the board, which affirmed the commissioner's decision. Naugatuck now appeals the board's decision to this court.

The question before us is whether a pension that was not given under the heart and hypertension statute, § 7-433c, is affected by the limitation of § 7-433b (b). We conclude that it is not affected and, therefore, we affirm the board's decision.

"Under the provisions of § 7-433c, qualifying members are entitled to receive (1) a retirement allowance from the municipal or state retirement system in an amount equal to what they would receive for a disability that arose out of and in the course of employment, and (2) compensation and medical care from the municipal employer in the same amount and in the same manner as provided for under the workers' compensation law." *Lundgren* v. *Stratford*, 12 Conn. App. 138, 144, 530 A.2d 183, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987). Historically, the total of those two benefits could exceed the amount a police officer would have received

if he were still working. 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1817; 20 H.R. Proc., Pt. 14, 1977 Sess., p. 6049. In 1977, however, the legislature enacted Public Acts 1977, No. 77-520, § 2, now General Statutes § 7-433b (b), which placed a 100 percent ceiling or cap on the total payments that could be received under § 7-433c. *Lambert* v. *Bridgeport*, 204 Conn. 563, 569, 529 A.2d 184 (1987). No longer could anyone receive a disability pension and hypertension benefits exceeding 100 percent of an active police officer's pay.

Naugatuck argues that all retirement benefits and pensions are included in the limitation of § 7-433b (b), not only those paid under § 7-433c. The plaintiff argues that if the legislature had intended to include within the § 7-433b (b) cap retirement benefits other than disability benefits payable under § 7-433c, it could have easily drafted § 7-433b (b) to read, "compensation under 7-433c and *all* retirement or survivors benefits shall be adjusted . . . ." " '[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' " *Lawson* v. *Whitey's Frame Shop*, 42 Conn. App. 599, 615, 682 A.2d 1016 (1996). Accordingly, we conclude that "retirement or survivors benefits under 7-433c" refers solely to disability pension and permanent partial disability benefits established in that statute.

Naugatuck argues that the plaintiff is receiving a windfall by collecting both his regular pension and the permanent partial disability benefit under § 7-433c. Naugatuck claims that this double recovery is contrary to the legislative intent of § 7-433b (b) because both benefits arose from the same cause, i.e., the 42.5 percent disability of the plaintiff's heart.

As a general rule, if two governmental benefits arise from the same cause, a person cannot be entitled to

both benefits. *Middletown* v. *Local Union No. 1073*, 1 Conn. App. 58, 64, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). The aim of the legislature when it enacted § 7-433c was to limit the payment of dual governmental benefits arising from the same cause, i.e., heart disease. Id.

Here, the commissioner specifically found that the plaintiff was awarded a retirement pension based solely on his length of service and that he was eligible for that pension regardless of his disability. In addition, the commissioner found that the plaintiff suffered a disability to his heart that entitled him to permanent partial disability benefits under § 7-433c. These are separate and distinct benefits. The pension and the disability benefits do not arise from the same cause and, therefore, do not implicate the limitation of § 7-433b (b). The statute prohibits only the receipt of hypertension disability benefits and a hypertension pension that together exceed 100 percent of an active duty officer's compensation. A pension for long years of service is not a factor in the calculation.

This court is satisfied that this interpretation is consistent with the language of the statute and equitable to a longtime service officer who becomes disabled. A thirty year veteran of the police department, vested with pension rights, should not be limited to the same benefits as a disabled rookie.

Finally, this court must give due deference to the board's interpretation of the statutes it enforces. "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Board of Labor Relations* v. *Freedom of Information Commission*, 43 Conn. App. 133, 138, 682 A.2d 1068

(1996), citing *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

The board determined that the ceiling of § 7-433b (b) applied solely to the two benefits under § 7-433c, that is, the permanent partial disability benefits and the disability pension. The board's decision relied on *Costello* v. *Fairfield*, 214 Conn. 189, 193, 571 A.2d 93 (1990). The Supreme Court in *Costello* affirmed the board's decision to allow a supplemental award of specific indemnity payments, holding that "[b]ecause the Heart and Hypertension Act is remedial legislation, we should not ourselves enlarge upon the limitations it imposes on recovery." Id., 194, citing *Kinney* v. *State*, 231 Conn. 54, 59, 566 A.2d 670 (1989); see also *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988). Similarly, this court will not limit the plaintiff's recovery beyond the clear and specific mandates of § 7-433b (b).

We conclude that the purpose of § 7-433b (b) is to prevent collection of both a disability retirement under § 7-433c and compensation benefits under § 7-433c when the total of those benefits would exceed 100 percent of the earnings of an active duty police officer in the same position as the plaintiff. This section is not applicable where, as here, the plaintiff's pension was not awarded "under Section 7-433c" but was a regular pension for long years of service.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.